NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0019n.06

No. 21-3560

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 10, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| KIMBERLY LUSE, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| ABUBAKAR ATIQ DURRANI, M.D., | ) | OHIO |
| Defendant, | ) | |
| | ) | |
| | ) | OPINION |
| THE CHRIST HOSPITAL, | ) | |
| Defendant-Appellee. | ) | |

Before:  SUTTON, Chief Judge; GUY and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.**  Over the last seven years, approximately 500 plaintiff-patients (represented by the same law firm) have brought medical malpractice and other tort claims in Ohio state and federal courts against former doctor Abubakar Durrani and several hospitals in the Cincinnati area where he performed surgeries.  One of those patients, Kimberly Luse, filed a federal complaint in December 2018 alleging that Durrani performed a medically unnecessary surgery on her spine in April 2008 at The Christ Hospital ("TCH") in Ohio.  Like many defendants in these Durrani lawsuits, TCH, the sole remaining defendant in this case, successfully argued in the district court that Luse's resulting claims for "negligent credentialing, supervision, & retention" and fraud are barred by Ohio's four-year statute of repose for medical claims.  *See* Ohio Rev. Code § 2305.113(C)(1).  On appeal, Luse makes several arguments about why her claims are not time-barred and why the district court erred in granting TCH's motion to

dismiss under Federal Rule of Civil Procedure 12(b)(6).  But because we already considered and rejected these exact arguments in *Levandofsky v. Durrani*, No. 20-4104, 2021 WL 5710122 (6th Cir. Dec. 2, 2021), we affirm.

For context, Ohio's statute of repose bars any action based on a "medical clam" that is "commenced more than four years after the occurrence of the act or omission constituting the alleged basis of the" claim.  Ohio Rev. Code § 2305.113(C); *see also Wilson v. Durrani*, 173 N.E. 3d 448, 452 (Ohio 2020).  A "medical claim" is broadly defined as "any claim that is asserted in any civil action against a physician [or] hospital . . . that arises out of the medical diagnosis, care, or treatment of any person."  Ohio Rev. Code § 2305.113(E)(3).  These claims include "[d]erivative claims for relief" and claims that both meet the broad definition above and "result[] from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment."[1]  *Id.* §§ 2305.113(E)(3)(a), (c)(ii).

Notwithstanding this broad language, Luse argues that the district court erred by concluding that her negligent credentialing claim against TCH was a "medical claim" under § 2305.113.  "To prove a negligent-credentialing claim, a plaintiff injured by the negligence of a staff doctor must show that but for the lack of care in the selection or retention of the doctor, the doctor would not have been granted staff privileges, and the plaintiff would not have been injured." *Schelling v. Humphrey*, 916 N.E.2d 1029, 1033 (Ohio 2009).  Although Luse contends that her claim is based on TCH negligently granting staff privileges to an incompetent physician and has nothing to do with any medical diagnoses, care, or treatment, her asserted injuries all stem from Durrani performing an allegedly negligent surgery on her.  As a result, her negligent credentialing

---

[1] In this context, the term "caregivers" includes a physician like Durrani. *Janson v. Christ Hosp., Inc.*, No. C-200047, 2021 WL 1657633, at *5 n.1 (Ohio Ct. App. Apr. 28, 2021) (citing *Couch v. Durrani*, No. C-190703, 2021 WL 942849, at *4 (Ohio Ct. App. Mar. 12, 2021)).

claim is clearly a medical claim because it arises out of her treatment and results from TCH putting Durrani in a position to perform surgeries. *See* Ohio Rev. Code § 2305.113(E)(3)(c)(ii). Moreover, every state and federal court to consider this argument in Durrani-related cases has unequivocally held that negligent-credentialing claims are medical claims under § 2305.113(E)(3) and are therefore subject to the statute of repose. *See Levandofsky*, 2021 WL 5710122, at *3 (collecting cases). We did not defect from these cases in *Levandofsky*, and we see no reason to do so here.

Luse next argues that her claims are best characterized as independent fraud claims, not medical claims subject to the statute of repose in § 2305.113, because they are based on TCH allegedly misrepresenting and concealing facts about the nature and risks of her surgery and falsely billing her insurance company for an unnecessary medical procedure. We agree that independent fraud claims are not subject to the medical claim statute of repose in § 2305.113, but rather to § 2305.09, which provides a four-year limitations period that commences when the plaintiff discovers the fraud. *See Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709, 713 (1987). However, the Ohio Court of Appeals has consistently rejected similar attempts to recast medical malpractice claims as fraud claims merely by alleging that Durrani or a credentialing hospital "misrepresented the nature of the spinal surgery and the particular risks that were involved therein to induce [the plaintiff] to undergo surgery and induce payment by her insurance company."[2] *E.g.*, *Freeman v. Durrani*, 144 N.E.3d 1067, 1072-73 (Ohio Ct. App. 2019). In *Levandofsky*, we followed this persuasive and lengthy line of cases and found that the plaintiff's claims of pre-

---

[2] As we stated in *Levandofsky*, it is appropriate for us to rely on decisions from the Ohio Court of Appeals interpreting Ohio law, particularly where, as here, the Ohio Supreme Court has refused to review those decisions and there is no indication that the Court would decide the issues differently. *See* 2021 WL 5710122, at *4 (citations omitted).

surgery and post-surgery fraud were indeed "medical claims" because they were "nearly indistinguishable from, and derive[d] from, [plaintiff's] primary claim that Durrani negligently performed [plaintiff's] surgery and follow-up care." 2021 WL 5710122, at *3. Adhering to that precedent, we also find that Luse's fraud allegations are "medical claims" subject to the statute of repose in § 2305.113.

As a last resort, Luse—like many Durrani plaintiffs before her—implores this Court to save her claims by using its inherent authority to create a fraud exception to the medical claim statute of repose. We declined an identical request in *Levandofsky*, recognizing, as did the Ohio Supreme Court, that the Ohio General Assembly provided fraud exceptions to other statutes of repose, such as the one governing product-liability claims, but intentionally chose not to create a fraud exception for medical claims. *See* 2021 WL 5710122, at *4 (quoting *Wilson*, 173 N.E.3d at 458). We also favorably cited *Freeman*, an Ohio Court of Appeals decision noting that "the General Assembly carved out specific exceptions within [§] 2305.113, none of which include fraudulent conduct[.]" 144 N.E.3d at 1071. For these same reasons, we will not disregard the General Assembly's intent and judicially craft a fraud exception to the statute of repose.

In sum, our precedent dictates that Luse's remaining claims against TCH constitute "medical claims" under Ohio's four-year statute of repose in § 2305.113(E)(3). Given that Luse waited more than four years after her April 2008 surgery to file the complaint, we affirm the district court's judgment dismissing her claims as time-barred.